IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

EDDIE LEE KNUCKLES,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 6:16-cv-02197-AA
**OPINION AND ORDER**

AIKEN, Judge District:

Plaintiff Eddie Lee Knuckles brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

**BACKGROUND**

On July 20, 2011, plaintiff protectively filed applications for DIB and SSI. He alleged disability beginning November 5, 2010, due to chromium exposure, ankylosing spondylitis, and alcohol abuse. Plaintiff's DIB and SSI applications were denied initially and upon

reconsideration, with the reconsideration denial dated June 19, 2012. On October 11, 2013, plaintiff appeared at a hearing before an ALJ and testified. A vocational expert ("VE") and plaintiff's sister, Cynthia Ann Humble, also testified. Plaintiff was represented by an attorney. In a written decision issued October 30, 2013, the ALJ found plaintiff not disabled. On June 14, 2015, the Appeals council issued an order remanding the matter to the ALJ for a new hearing. A second hearing before the ALJ was held on January 14, 2016. Plaintiff and a VE testified at the hearing. On February 25, 2016, the ALJ again issued a written decision finding plaintiff not disabled. After the Appeals Council denied review, plaintiff filed the present complaint.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date of November 5, 2010. 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b). At step two, the ALJ found plaintiff had the following severe impairments as of the alleged onset date: ankylosing spondylitis, osteoarthritis, status-post rotator cuff surgery, chronic obstructive pulmonary disease ("COPD"), and depression. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *id.* §§ 416.920(a)(4)(ii), (c).

At step three, the ALJ determined that plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d).

The ALJ then assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); *id.* § 416.920(e). The ALJ found that plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations. The claimant is limited to no more than occasional stooping, crouching, kneeling, balancing, crawling, and climbing. The claimant would also need to avoid more than occasional exposure to fumes, dust, gases, poor ventilation, and other noxious odors. The claimant would be limited to simple, repetitive, routine tasks requiring no more than occasional interaction with supervisors, co-workers, and the general public.

Tr. 24. At step four, the ALJ concluded plaintiff could not perform any of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). At step five, however, the ALJ

found that plaintiff could perform work existing in the national economy; specifically, plaintiff could work as a painter, building maintenance manager, and general labor, landscaping. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1). Accordingly, the ALJ found plaintiff not disabled and denied his applications for benefits.

## DISCUSSION

Plaintiff makes several assignments of error, arguing that: 1.) the ALJ erred in evaluating the medical evidence offered by treating and other sources, 2.) the ALJ erred in assessing in plaintiff's RFC, 3.) the ALJ erred in discrediting plaintiff's subjective symptom testimony, 4.) the ALJ erred in discrediting lay witness statements, and 5.) the ALJ erred in his step five finding. The Commissioner argues that the ALJ's decision was supported by substantial evidence and in any error that may have been committed was harmless. I address each of plaintiff's arguments in turn.

I.  *Evaluation of Medical Opinion Evidence*

Plaintiff argues that the ALJ erred in not fulling crediting the limitations set forth by Dr. Mark Hughes M.D., plaintiff's treating physician, and Counselor Karen Ludwig, LPC.

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities." *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

There are three types of medical opinions in Social Security disability cases: those of treating, examining, and reviewing physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02

(9th Cir. 2001). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202; *accord* 20 C.F.R. § 404.1527(d). "[C]lear and convincing" reasons are required to reject a treating doctor's ultimate conclusions. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion unless the Commissioner provides "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Id.* (citing *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983).

A.  *Medical Opinion of Dr. Mark Hughes*

On September 30, 2013, Dr. Hughes completed a questionnaire regarding plaintiff's mental and physical impairments. He noted that plaintiff had multi-joint degenerative disease as result of exposure to chromium, chronic depression with "major depression D/O", and chronic fatigue.

Dr. Hughes further noted, regarding plaintiff's mental limitations, that plaintiff had no useful ability to interact appropriately with the general public, travel in an unfamiliar place, use public transportation, maintain attention for two hour segments, work in coordination with or proximity to others without being unduly distracted, perform at a consistent pace without an unreasonable number and length of rest periods, or respond appropriately to changes in a routine work setting. Dr. Hughes also noted that plaintiff's ability to function was seriously limited but not precluded in maintaining regular attendance and being punctual within customary, usually strict tolerances, making simple work-related decisions, completing a normal workday and workweek without interruptions from psychologically based symptoms, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from

supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, dealing with normal work stress, and being aware of normal hazards and taking appropriate precautions. He also opined that plaintiff's ability to maintain socially appropriate behavior, sustain an ordinary routine without special supervision, and adhere to the basic standards of neatness and cleanliness was limited, but satisfactory.

The ALJ gave only little weight to this mental medical source statement, because he found that the severity of the limitations noted in the questionnaire where inconsistent with Dr. Hughes treatment notes. Dr. Hughes' opinion is not uncontroverted, meaning the ALJ had to offer specific and legitimate reasons for discrediting it. Inconsistency with the medical record is a specific and legitimate reason to give less weight to a medical opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (citing *Molina v. Astrue,* 674 F.3d 1104, 1111-12 (9th Cir. 2012). ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider.") The ALJ pointed to numerous examples of inconsistencies in Dr. Hughes notes from 2011 to 2013. Namely, the ALJ noted that Dr. Hughes recorded that plaintiff had normal insight and judgment, was orientated to time, place, and person, and had intact recent and remote memory with no signs of anxiety, agitation, or depressed affect in 2011. The ALJ also pointed to Dr. Hughes's notes which indicated that plaintiff was cooperative during an examination, and had good insight in and judgment in 2013. Also, in 2013, Dr. Hughes recorded no psychological findings in July and September 2013. Given this analysis, the ALJ's decision to give little weight to the questionnaire prepared by Dr. Hughes was supported by substantial evidence.

As to plaintiff's physical limitations, Dr. Hughes noted in the questionnaire that plaintiff's physical impairments would prevent him from sitting or standing for more than 15

Page 6 – OPINION AND ORDER

minutes at time or more than 2 hours in an eight hour work day. He opined that plaintiff would need to change positions at will and would need unscheduled breaks, resting 10 minutes before returning to work, during the workday every 30-45 minutes. Dr. Hughes further indicated that plaintiff would be able to frequently lift less than 10 pounds and lift 10 pounds occasionally. He also noted plaintiff should avoid extreme cold and fumes, odors, dusts, and gases. Plaintiff could occasionally twist, stoop (bend), and climb stairs, but could never crouch and climb ladders. Dr. Hughes anticipated that plaintiff's impairments would cause him to be absent from work more than twice a month.

Again, the ALJ gave little weight to the physical medical source statement because he found that "it is generally inconsistent with the objective evidence of record." Tr. 28-29. The ALJ cited to Dr. Hughes's treatment notes from 2013 and 2014, where plaintiff "had moderate and painful range of motion in his bilateral shoulders, improved range of motion in his knee, and intact motor sensory examinations in upper and lower extremities." Tr. 29. Later in 2014, Dr. Hughes noted plaintiff had no tenderness to palpitation in the back, normal range of motion in the right hip with some pain on external rotation, no swelling or point tenderness in the left ankle, normal sensory and motor examinations, as well as normal strength and gait. Again, as noted above, pointing to inconsistencies in the medical record is a specific and legitimate reason for discounting a treating physician's opinion evidence. Thus, the ALJ's decision is supported by substantial evidence.

B. *Opinion of Counselor Karen Ludwig, LPC*

Non-acceptable medical sources are commonly categorized as "other sources." *Molina*, 674 F.3d at 1111. An ALJ may discount testimony from other sources if the ALJ gives germane reasons for doing so. *Id.* Counselors are treated as "other sources" under the

regulations, not acceptable medical sources, and are thus entitled to lesser deference. *See* SSR 06-03P; *Molina*, 674 F.3d at 1111. The ALJ need only give germane reasons to discount such opinions. *Id.* Germane reasons to discount opinions include lack of support, *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002), and internal inconsistencies in the opinion, *Robinson v. Berryhill*, 690 F. App'x 520, 524 (9th Cir. 2017).

LPC Ludwig completed a Mental Functional Capacity Questionnaire on August, 10, 2012. She noted that plaintiff had pervasive loss of interest in almost all activities, feelings of guilt or worthlessness, generalized persistent anxiety, emotional withdrawal or isolation, difficulty thinking or concentrating, thoughts of suicide, mood disturbance, and substance dependence. Ms. Ludwig also opined that, when in pain, plaintiff is unable to focus or be motivated and that his depression increases. She indicated that plaintiff's impairments would cause him to be absent from work for more than four days per month. Finally, Ms. Ludwig indicated plaintiff had marked limitations with regard to restriction of plaintiff's activities of daily living, difficulty in maintaining social functioning, and episodes of decompensation within a 12 month period, each of at least two weeks duration. She also recorded that plaintiff had extreme difficulties in maintaining concentration, persistence or pace.

The ALJ found that the limitations suggested by Ms. Ludwig were inconsistent with her own objective findings. He cited Ms. Ludwig's treatment notes where she found plaintiff to be cooperative with normal thought processes, intellectual functioning orientation, sensorium, cognition and memory. As noted about lack of support in the record and internal inconsistency are germane reasons for giving Ms. Ludwig's opinion, in the form of the questionnaire, little weight. Thus, the ALJ's determination was supported by substantial evidence.

///

II. *Assessment of Plaintiff's RFC*

Plaintiff next argues that while the ALJ found that plaintiff has moderate difficulties in performing activities of daily living, in social functioning, and in maintaining concentration, persistence, or pace in his step three analysis, the RFC formulated by the ALJ did not adequately capture the degree of this limitation. The Commissioner argues that plaintiff's contention is without merit and that the ALJ properly formulated the RFC.

The ALJ determines a claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). RFC is "what [one] can still do despite [one's] limitations." 20 C.F.R. § 416.945(a)(1). It is "based on all the relevant medical and other evidence in [the] case record." *Id.* If a claimant has multiple impairments, they are all included in the assessment. § 416.920(a)(2). The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e). The RFC is used at step four to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work. *Id.*

In determining the RFC, the ALJ is not required to discuss every piece of medical evidence. *Lusardi v. Astrue*, 350 F. App'x 169, 173 (9th Cir. 2009). However, if the ALJ rejects significant probative evidence, the ALJ must explain the reason for the rejection. *Id.* The ALJ is not required to consider evidence that has already been discredited or discounted. *Dean v. Comm'r of Soc. Sec.*, 504 F. App'x 563, 566 (9th Cir. 2013). "The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out all the limitations and restrictions of the particular claimant.' Thus, an RFC that fails to take into account a claimant's limitations is

defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir 2009) citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988).

Plaintiff is correct that in his analysis of whether plaintiff met or equaled the Listed Impairment 12.04 (depressive, bipolar, and related disorders) the ALJ noted that plaintiff had "mild restriction" in activities of daily living as well as "moderate difficulties" in "social functioning" and "concentration, persistence, or pace." (Tr. 23-24.) However the SSA regulations provide that

> [t]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8P 1996 WL 374184. "[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Thus, the ALJ did not commit reversible error for failing to translate his step two and three analyses into the RFC analysis.

Moreover, the RFC adequately took plaintiff's mental limitations into account. The RFC itself did not limit plaintiff merely to simple work. Rather, it limited him to "simple repetitive, routine tasks requiring no more than occasional interaction with supervisors, co-workers, and the general public." Tr. 24. The ALJ noted that plaintiff continued to engage in activities requiring concentration, persistence and pace, such household chores, watching television, driving, as well as handling his budget and finance. In terms of social functioning, the ALJ noted that plaintiff reported being able to get along with authority figures, spending time with others, and being

cooperative with treatment providers. Further, ALJ cited to the record of treatment notes where plaintiff was noted to have normal thought content and process, normal judgement, insight, memory, and orientation.

Plaintiff also argues that the ALJ should have given a more limited RFC based on Dr. Hughes medical opinion. As noted above, however, the ALJ gave specific and legitimate reasons for discounting Dr. Hughes medical opinion. Thus, the ALJ did not commit harmful in formulating plaintiff's RFC.

III.   *Evaluation of Plaintiff's Subjective Symptom Testimony*

Plaintiff next contends that the ALJ erred in failing to make specific, clear and convincing findings to support his rejection of plaintiff's subjective symptom testimony.

When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *see also Molina*, 674 F.3d at 1112 (9th Cir. 2012). Three examples of specific, clear and convincing reasons for discounting a claimant's testimony include (1) inconsistency with objective medical records, *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004); (2) conservative and/or effective treatment, *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); and (3) testimony of symptoms is inconsistent with activities of daily living, *Molina*, 674 F.3d at 1113.

A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible."

*Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza*, 50 F.3d at 750. If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

Here, the ALJ specifically pointed to several appropriate reasons to discount plaintiff's testimony. Namely, the ALJ focused on the testimony's inconsistency with medical records and plaintiff's activities of daily living. Regarding plaintiff's shoulder complaints, the ALJ pointed out that following plaintiff's shoulder surgeries, plaintiff symptoms had improved. In 2011, plaintiff had full range of motion in the right shoulder with intact cuff strength with mild fatigue, and mild discomfort with palpation around bicipital groove. With respect to his left shoulder, plaintiff had increased range of motion, intact cuff strength with very little discomfort, and findings on motor and sensory examination were within normal limits.

Turning to plaintiff's complaint of knee pain, the ALJ noted that in a 2012 examination of plaintiff's extremities revealed that he had normal range of motion, no edema, no clubbing, 2+ pulses bilaterally, as well as normal sensory and motor functioning, sensation, strength, and gait. Plaintiff also complained of right elbow pain and was treated for such in 2013 by Dr. Hughes. The ALJ pointed out that there was no indication that plaintiff continued to complain of right elbow pain after 2013, and he did not complain of it at the hearing. Dr. Tom Allumbaugh treated plaintiff for hip and ankle pain after plaintiff suffered a fall in 2014. However, Dr. Allumbaugh noted that plaintiff had normal range of motion in the right hip with some pain on external range of motion, that there was no swelling or point tenderness on the ankle. He also noted that plaintiff had normal sensation, strength and gait. At a follow up examination one month later,

plaintiff reported improvement in hip pain, and the examination revealed that he had normal range of motion in the hip and normal gait.

Regarding plaintiff's complaints of back pain, the ALJ noted that during an office visit in 2014, Dr. Allumbaugh's physical examination findings remained unremarkable. The ALJ did point out that plaintiff visited the emergency room with complaints of low back pain and difficulty walking. An examination revealed that plaintiff had decreased range of motion, muscle spasm, and vertebral point tenderness. X-ray imaging did reveal age indeterminate L1 and possible T12 compression fractures, as well as sclerosis and ankyloses of the sacroiliac joints. The ALJ did note that plaintiff testified that he was not receiving any treatment or medication for the pain, suggesting that despite the emergency room visit in 2015, plaintiff's everyday experience of the pain and functional limitations were not as significant as alleged.

Concerning plaintiff mental impairments, the ALJ noted that plaintiff has been in treatment with Ms. Ludwig. The ALJ also noted plaintiff seemingly improved over time with treatment, in that his GAF score rose from 50 to 53 and his medication was reduced. I note that there is some discrepancy over whether plaintiff stopped taking medicine because his pain improved or because the medication had ill-effects.

Further ALJ, also opined that plaintiff's wide range of activities undermined the credibility of his allegations. While plaintiff reported that he is unable to focus, does not like being around others, and cannot sit or stand for too long, the record also revealed that plaintiff lives in a house with friends, cares for pets with some help from those roommates, prepares his

Page 13 – OPINION AND ORDER

own meals, performs a variety of chores including laundry, cleaning, and mowing. Plaintiff is also is capable of shopping in stores and spending time with others.[1]

Thus the ALJ cited specific, clear and convincing reasons, supported by the medical record, for finding that plaintiff's statements regarding the intensity, persistence, and limiting of effects of his symptoms were not entirely credible. Although, I have some question over plaintiff's choices regarding medication, when the evidence before the ALJ is subject to more than one rational interpretation, district courts must defer to the ALJ's conclusion. *Andrews*, 53 F.3d at 1041. Here, the ALJ offered many reasons which are considered clear and convincing to discredit plaintiff's statements, both in terms of inconsistencies with the medical record and activities of daily living. Therefore, I find that substantial evidence support the ALJ's decision.

IV. *Evaluation of Lay Witness Statements*

Plaintiff also argues that the ALJ improperly discounted the lay witness statements of his sister, Cynthia Ann Humble, and his friend, Jocelyn Ward.

In general, "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." *Nguyen v. Cater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis omitted). This is because "[a]n eyewitness can often tell whether someone is suffering or merely malingering," particularly if the witness "view[s] the claimant on a daily basis[.]" *Dodrill*, 12 F.3d at 919. An ALJ may discount lay witness testimony only by providing reasons that are "germane" to each witness. *Id.* Reasons that are at least germane in which an ALJ may discount lay witness testimony include (1) inconsistencies or contradictions with medical evidence, *Lewis v. Apfel*,

---

[1] The commissioner also notes that plaintiff reported working on "cycles and lawnmowers" to earn extra money. (Tr. 588). However, this piece of evidence was not noted by the ALJ in his reasoning and therefore does not serve as a basis for upholding his decision.

Page 14 – OPINION AND ORDER

236 F.3d 503, 511 (9th Cir. 2001), and (2) internal inconsistencies in a statement. *Robinson*, 690 F. App'x at 524; *see also Oregon v. Barnhart*, 26 F. App'x 691, 693 (9th Cir. 2002) (internal inconsistencies between statements is a clear and convincing reason to discount credibility). Clear and convincing reasons to discount lay witness credibility also constitute germane reasons. *Khal v. Berryhill*, 690 F. App'x 499, 502 (9th Cir. 2017).

Further, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

Here, the ALJ gave the statements by Ms. Ward and Ms. Humble little weight because they were not consistent with "the objective medical evidence and medical opinions of record." Tr. 29-30. For the reasons noted when I discussed the testimony of Ms. Ludwig, this is a germane reason to discount lay testimony. The lay statements are largely consistent with plaintiff own subjective testimony which was also properly discounted. The ALJ did also note that he gave little weight to Ms. Ward and Ms. Humble's testimony because of their close relationship with plaintiff and believed that their statements would be colored by affection and lack of disinterest. This is also a germane reason to doubting the credibility of lay testimony. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006.) Thus, as the ALJ gave multiple germane reasons for assigning little weight to these opinions, there is no harmful error.

V.  *Step Five Analysis*

Finally, plaintiff argues that the ALJ's step five finding is not supported by substantial evidence. He avers that the hypothetical posed to the VE by the ALJ is flawed because it did not include limitations presented in plaintiff's testimony and the testimony of the lay witnesses.

"The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out all the limitations and restrictions of the particular claimant.' Thus, an RFC that fails to take into account a claimant's limitations is defective." *Valentine*, 574 F.3d at 690 (citing *Embrey*, 849 F.2d at 422.

However, the ALJ is not required incorporate opinion evidence that was previously permissibly discounted. *See Batson*, 359 F. 3d 1190 (citing to *Johnson v. Shalala*, 40 F.3d 1428, 1433 (9th Cir. 1995)). Here, I have already noted that the ALJ provided clear and convincing reasons for discounting plaintiff's testimony and germane reasons for giving little weight to the testimony of the lay witnesses. Thus, there was no error in the hypothetical posed to the VE.

Finally, plaintiff contends that the ALJ committed reversible error in finding that plaintiff could work as a mail sorter. According to the Dictionary of Occupational titles, mail sorter has GED Reasoning Level of 3, which plaintiff argues is inconsistent with simple, routine, repetitive work. *See Zavalin v. Colvin*, 778 F.3d 842 (9th Cir. 2015.) The Commissioner does not offer specific arguments contesting this assertion; rather she argues that any error in this finding is harmless. She avers that the error is harmless because the ALJ properly relied on two other jobs present in significant numbers in the national economy. The ALJ found that plaintiff could also work as a price marker and laundry folder of which there exists a combined 198,065 jobs in the national economy. Assuming that the ALJ erred in finding that plaintiff could work as a mail sorter, I will examine whether the error is harmless because jobs in which plaintiff can work exist in significant numbers.

I note that the standard for "work which exists in the national economy" can be satisfied by "work which exists in significant numbers *either* in the region where such individual lives *or* in several regions of the country." *Gutierrez*, 740 F.3d at 528 (emphasis in original)

(citing 42 U.S.C. § 1382c(a)(3)(B); *Beltran*, 700 F.3d at 389–90.) There is no bright line rule for what constitutes a significant number of jobs. *Id.* As such, I must consider whether substantial evidence would support the ALJ's decision that these 198,065 national jobs constituted "work which exist[ed] in significant numbers . . . in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B); *see also Allen,* 816 F.2d at 602 (holding that even if credible evidence indicated a lack of a significant number of jobs in a particular geographic area, a "failure to disprove the existence of ... jobs on a national scale would leave the ALJ's [step-five] finding intact").

The court in *Gutierrez*, after reviewing decisions involving other "close calls," found that a finding of 25,000 jobs satisfied the command of 42 U.S.C. § 1382(c)(3)(B). 740 F.3d at 528. Likewise, I hold that the ALJ's finding of 198,065 jobs for price marker and laundry sorter qualifies as "work which exists in significant numbers . . . in several regions of the country." 42 U.S.C. § 1382(c)(3)(B). Thus, any error committed by the ALJ in finding that plaintiff could work as a mail sorter is harmless.

## CONCLUSION

For the reason set forth above, the Commissioner's decision AFFIRMED. Accordingly, this case is dismissed.

IT IS SO ORDERED.

Dated this 30th day of March 2018.

---
Ann Aiken
United States District Judge